IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


SOUTHWEST CENTER FOR BIOLOGICAL
DIVERSITY and Dr. ROBIN SILVER,

      Plaintiffs,

  vs.                                  No. CIV 99-519 LFG/LCS-ACE

DEPARTMENT OF INTERIOR, BRUCE BABBITT
in his official capacity as Secretary; and JAMIE
RAPPAPORT CLARK, in her official capacity
as Director of U.S. Fish and Wildlife Service,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION TO COMPEL AGENCY ACTION**

THIS MATTER is before the Court on Plaintiffs' Motion to Compel Agency Action, or,

Alternatively, Motion for Summary Judgment [Doc. 12]. Having considered the parties' submissions

and being fully advised in the matter, the Court finds that Plaintiffs' motion is well taken and should

be GRANTED.[1]

Defendants concede that they are in violation of the Endangered Species Act ("ESA"), in that

they have not designated "critical habitat" for the Mexican spotted owl within the time set forth in the

Act and its implementing regulations. 16 U.S.C. §§ 1513-44; 50 C.F.R. Part 424. The parties' only

---

[1] Intervenor status was granted to Catron County Board of Commissioners. However, its intervention was authorized subsequent to the completion of the briefing on Plaintiffs' motion to compel. Intervenors neither requested nor submitted any briefing.

dispute lies in the length of time it will take Defendants to designate critical habitat for the owl. Defendants present a lengthy timetable, listing myriad tasks the United States Fish and Wildlife Service ("FWS") will have to undertake in order to research and draft a proposed rule on critical habitat and get it approved and published in the Federal Register, and thereafter to solicit public comment, complete an economic analysis, and comply with the National Environmental Policy Act ("NEPA") before publishing a final rule. They suggest it will take them 18 to 24 months to complete these tasks. Plaintiffs point out that the Mexican spotted owl was placed on the threatened species list in March 1993, and Defendants have not only had several years since that time to designate critical habitat, but they have already done so once (although it was later revoked), and much of the work has already been done. Plaintiffs suggest a deadline of 60 days.

## Background

The following brief chronology summarizes Plaintiffs' valiant and persistent attempts to extend federal protection to the Mexican spotted owl. Equally important, the chronology also evidences years of delay relating to FWS' compliance obligations.

On December 22, 1989, Dr. Robin D. Silver, one of the Plaintiffs herein, petitioned the FWS to have the Mexican spotted owl listed as an endangered or threatened species under the ESA. After extensive study and public comment, FWS published its final rule on March 16, 1993, listing the owl as a threatened species. 58 Fed. Reg. 14,248 (1993). At the time of the owl's listing, FWS noted that designation of critical habitat was prudent, but not determinable. Subsequent to the listing, the FWS began gathering data on owl habitat and distribution, in preparation for a proposed rule designating critical habitat, but by February 1994, no proposed rule had been published.

On February 14, 1994, Dr. Silver and other plaintiffs filed a lawsuit against the Department

of the Interior in United States District Court for the District of Arizona, seeking to enforce the Department's statutory duty to designate critical habitat for the Mexican spotted owl. Silver v. Babbitt, No. CIV 94-337-PHX-CAM. On October 6, 1994, the Arizona federal court found in favor of the plaintiffs and ordered FWS to publish a proposed rule designating owl habitat by December 1, 1994, with a deadline for publication of the final rule set at May 30, 1995. FWS missed the deadline for publishing the proposed rule. On December 7, 1994, the Arizona court ordered FWS to comply with its earlier order. On May 10, 1995, the court rejected FWS attempt to delay final publication and again ordered full compliance with its directive. Silver v. Babbitt, 924 F. Supp. 972 (D. Ariz. 1995) A final rule designating critical habitat for the Mexican spotted owl was finally published on June 6, 1995. 60 Fed. Reg. 29,914.

This designation, however, was revoked on March 25, 1998 (63 Fed. Reg. 14,378), in response to the ruling in Coalition of Arizona/New Mexico Counties v. United States Fish and Wildlife Service, No. CIV 95-1285-M (D.N.M.). Plaintiffs in the Coalition of Arizona/New Mexico Counties case sought to have the habitat designation declared invalid because FWS had not complied with the documentation requirements of NEPA in making the designation. On March 4, 1997, Senior Judge Edwin L. Mechem enjoined FWS from enforcing the critical habitat designation for the Mexican spotted owl until it completed NEPA review, relying on the Tenth Circuit's ruling in Catron County Board of Commissioners v. United States Fish and Wildlife Service, 75 F.3d 1429, 1439 (10th Cir. 1996). One year after Judge Mechem's order, FWS revoked the owl's habitat designation. It has taken no further action since that time to comply with NEPA or to fulfill its obligation under ESA. This present lawsuit involves Plaintiffs' attempts to simply compel FWS to comply with its mandatory statutory duties and designate critical habitat for the Mexican spotted owl.

**Discussion**

The ESA provides that the Secretary of the Interior shall, "to the maximum extent prudent and determinable," designate critical habitat for a species at the same time that it publishes a final regulation implementing the determination that a species is endangered or threatened. 16 U.S.C. §§ 1533(a)(3), 1533(b)(6)(C). The Secretary must utilize "the best scientific data available" in designating critical habitat. 16 U.S.C. § 1533(b)(2). The time for such designation may be extended for one year if the Secretary establishes that the critical habitat is not determinable at the time of listing, but "not later than the close of such additional year the Secretary must publish a final regulation, based on such data as may be available at that time . . .." 16 U.S.C. § 1533(b)(6)(C)(ii). Thus, it is clear under these statutory provisions, FWS is well beyond any time limit established by Congress for the critical habitat designation.

One of the declared purposes of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . .." 16 U.S.C. § 1531(b). Legislative history of amendments to the ESA indicates that Congress was as concerned about designating critical habitat as in listing endangered and threatened species. "In many cases, the process of extinction has been associated with an increase in man's ability to alter natural habitats for his own devices. The loss of habitat for many species is universally cited as the major cause for the extinction of species worldwide." H.R. Rep. No. 95-1625, at 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9453, 9455. Congress well recognized that merely listing a species as endangered or threatened wasn't enough to guarantee protection of the species. Equally important in the Congressional plan for protecting nature's wonders, was the critical habitat designation.

Congress intended that FWS would act rapidly and efficiently in making listings and

4

designating critical habitat under the ESA. In the Endangered Species Act Amendments of 1982, Congress added mandatory deadlines for taking the various steps necessary to secure protection for endangered and threatened species. Pub. L. 97-304, 96 Stat. 1426. Those deadlines evidence Congressional intent to set limits on an agency's discretion to act. In addition, as noted above, although the Secretary is required to use "the best scientific data available" in determining a species' critical habitat, Congress allows the Secretary to use "such data as may be available at the time," if the designation looks as if it will take longer than one year. It is apparent that time is an important factor in protecting endangered and threatened species, and it is equally clear that Congress did not intend that the time for designating critical habitat under the ESA be extended indefinitely.

It has been almost seven years since the Mexican spotted owl was listed as a threatened species. 58 Fed. Reg.14,248 (1993). Because FWS concluded that the critical habitat of the owl was not "presently determinable," it was exempted from the general rule that habitat designation be accomplished simultaneously with listing. The final rule listing the owl provides that,

> [a]lthough considerable knowledge of Mexican spotted owl habitat needs has been gathered in recent years, maps in sufficient detail to accurately delineate these areas on the grounds are not presently available. The Service has initiated the studies needed to ascertain critical habitat areas and will publish, in the Federal Register, a final rule to designate critical habitat for the Mexican spotted owl by November 4, 1993.

58 Fed. Reg. at 14,270 (1993).

As noted above, the original rule designating critical habitat for the owl was published on June 6, 1995, accurately described by Plaintiffs as "two years and three court orders" after the owl was listed as threatened. (Memorandum in Support of Plaintiffs' Motion [Doc. 13], at 7). This designation was revoked on March 25, 1998, and FWS has had two years since then to begin the

process of making the critical habitat determination for the owl. It is reasonable to expect that FWS

would have begun this process, which they describe as "time and resource-intensive" (Defendants'

Response to Plaintiffs' Motion [Doc. 16], at 9), sometime within that two-year period. It is also

reasonable to expect that FWS would have done what the law required it to do

without being prodded by a court. FWS's briefing in this case makes clear that it has done little or

nothing since the March 1998 revocation to put this lengthy process in motion.

The Court recognizes that the process is difficult and taxing. A multitude of competing and

equally compelling interests must be considered, and due to the conflicting demands, the outcome is

certain to result in dissatisfaction.

The burdens imposed by this "mandatory, non-discretionary duty unambiguously imposed by

the ESA" are daunting. Forest Guardians v. Babbitt, 174 F.3d 1178, 1181 (10th Cir. 1999). FWS

argues, and this Court agrees, that performance of the duty requires a commitment of extraordinary

amounts of time, talent, and resources. Congress' mandate, evidenced by obligations imposed by the

ESA, would be challenging under the best of circumstances. FWS' task is made all the more difficult

when budgetary, time and personnel constraints further limit its ability to do what Congress requires.

While the Court may sympathize, it is clear that budgetary limitations, or agency preferred

priorities may not be considered as excuses for failing to perform mandatory duties. Forest

Guardians, at 1181.

Defendants recite a litany of tasks which must be done before a final, or even proposed, rule

designating critical habitat can be published. They argue that it will take them seven months or more

before they can even publish a proposed rule. During these months, they say, they will have to update

the biological and economic information which they gathered in connection with the 1995

designation, analyze and incorporate a recovery plan for the owl and consider land and resource

management plans for National Forests in New Mexico and Arizona, meet with six different Indian

tribes, draft a new proposed rule, and get approval from eight different government departments and

agencies. Defendants argue that, of these seven months, it will take one full month to draft the

proposed rule, and a minimum two additional months to obtain the necessary approvals.

Defendants further estimate that it will take an additional 11 to 17 months to complete the

steps necessary to finalize the rule. Those steps include allowing a 60-day period for public notice

and comment, subsequent analysis of these comments, economic analysis, and NEPA compliance.

Although this Court "must consider what work is necessary to publish the final rule and how

quickly that can be accomplished," Forest Guardians, at 1193, it finds Defendants' request for

substantially more time unreasonable. In a similar case, Southwest Center for Biological Diversity

v. Clark, No. CIV 98-769 M/JHG, FWS was able to prepare and file a proposed rule designating

habitat for the spikedace and loach minnow in less than three months, following a court order. In that

case, Judge Mechem set February 17, 2000 as the deadline for publication of the final rule. The Clark

Defendants, who are the same Defendants here, recently requested and were granted an extension of

time for publishing the final rule, which would expand the total time period to approximately seven

months. In a declaration attached to the Defendants' Motion to Enlarge Deadline for Agency Action,

FWS Director Jamie Rappaport Clark represented that:

> If the Court grants the Service the 60-day extension for completing
> the final critical habitat designation for the spikedace and loach
> minnow, the Service will be able to: (1) Allow for a full 60-day
> comment period; (2) properly coordinate with potentially affected
> parties such as tribes and local governments; (3) adequately address
> the comments received in response to the proposal; (4) perform a
> thorough scientific analysis that will ensure that the designation is
> biologically sound; (5) prepare a more thorough and complete

7

economic analysis; (6) ensure that the NEPA decision-making process is defensible to the greatest extent possible; and (7) avoid making unreasonable demands on its personnel.

Thus, in the spikedace and loach minnow habitat designation case, FWS represented that it could complete the entire process of designating a critical habitat, in a professional and thorough manner, in seven months, albeit with some strain on its personnel and resources. Defendants also concede that, when necessary, FWS can expedite its research and analysis as well as the internal government approval process (Clark Declaration in CIV 98-769, at 2). The Court notes that, in contrast to the circumstances of the spikedace and loach minnow case, the Mexican spotted owl habitat designation involves only one species, the habitat is primarily on National Forest lands as opposed to mixed private and public lands, and FWS has the benefit of a prior critical habitat designation so that it will not have to start completely from scratch.

The Court finds that four months is a reasonably sufficient time for Defendants to research and prepare a proposed rule, and that six months thereafter is reasonably sufficient for public comment, NEPA compliance, and preparation of a final rule. This amount of time, while substantially less than the amount requested, is deemed reasonable in light of the extensive delays already experienced and the need to comply with obligations imposed by law.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel Agency Action [Doc. 12] is granted;

IT IS FURTHER ORDERED that summary judgment in favor of Plaintiffs will be entered in this case;

IT IS FURTHER ORDERED that Defendants will complete and publish a final rule designating critical habitat for the Mexican spotted owl by January 15, 2001.

A Final Judgment in accordance with this Memorandum Opinion will issue.


Lorenzo F. Garcia
United States Magistrate Judge